1

**CARLSON LYNCH, LLP**
Todd D. Carpenter (234464)
tcarpenter@carlsonlynch.com
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel:    619-762-1910
Fax:    619-756-6991

2

3

4

5

*Attorneys for Plaintiff(s)*

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

JACK WILLIAM WEAVER on behalf of
himself and all others similarly situated,

Case No.:

11

Plaintiff,

**CLASS ACTION COMPLAINT**

12

**JURY TRIAL DEMANDED**

13

v.

14

PARKMOBILE, LLC, and PARKMOBILE
USA, INC,

15

Defendants.

16

17      Plaintiff Jack William Weaver ("Plaintiff"), brings this Class Action Complaint, on behalf of

18   himself and all others similarly situated, against Defendants**,** ParkMobile, LLC and ParkMobile USA, Inc.

19   (collectively, "ParkMobile" or "Defendants"), alleging as follows based upon information and belief and

20   investigation of counsel, except as to the allegations specifically pertaining to him, which are based on

21   personal knowledge:

22                                    <u>**NATURE OF THE CASE**</u>

23      1.      Plaintiff brings this class action against ParkMobile for ParkMobile's failure to properly

24   secure and safeguard highly-valuable, protected personally identifiable information, including without

25   limitations, names, license plate numbers, email addresses, phone numbers, vehicle nicknames,

26   passwords, and home addresses (collectively, "PII"), failure to comply with industry standards to protect

27   information systems that contain PII, and failure to provide adequate notice to Plaintiff and other members

28   of the Classes that their PII had been accessed and compromised. Plaintiff seeks, among other things,

damages, orders requiring ParkMobile to fully and accurately disclose the nature of the PII and other information that has been compromised and to adopt reasonably sufficient security practices and safeguards to protect Plaintiff's and the Class' PII and to prevent incidents like this disclosure in the future. Plaintiff further seeks an order requiring ParkMobile to provide identity theft protective services to Plaintiff and members of the Classes for their lifetimes, as Plaintiff and members of the Classes are, and will continue to be at an increased risk of identity theft due to the disclosure of their PII as a result of the conduct of ParkMobile described herein.

2.    ParkMobile owns and operates mobile applications that provide parking services to users throughout the United States. These services include, *inter alia*, allowing a user to pay the cost for parking at a parking meter from a mobile device, or reserving a parking spot for future use.

3.    ParkMobile requires users to create an account in order to use their services through their mobile applications. During the registration process, Plaintiff and other users are required to provide their PII to ParkMobile.

4.    On March 26, 2021, ParkMobile announced that it had been subject to a cybersecurity incident related to a vulnerability in a third-party software vendor that ParkMobile uses (the "Data Breach"). An exemplar of the Data Breach notification is attached hereto as "Exhibit A."

5.    Since the Data Breach, ParkMobile has provided updates to state that its investigation into the Data Breach has confirmed that the compromised information included its users' PII. These updates are displayed on Exhibit A.

6.    The Data Breach was a direct and proximate result of ParkMobile's failure to implement and follow basic security procedures, Plaintiff's and Class Members' PII is now in the hands of criminals. Plaintiff and members of the Classes now face a substantially increased risk of identity theft, both currently and for the indefinite future, at least in part because their PII will now be offered and sold to identity thieves in an aggregated format, lending itself for ease of use in widespread phishing email schemes, identity theft and other harms caused by the disclosure of their PII. Consequently, Plaintiff and members of the Classes have had to spend, and will continue to spend, significant time and money in the future to protect themselves due to ParkMobile's actions.

7.     Plaintiff, on behalf of himself and all others similarly situated, bring claims for negligence, negligence *per se*, violation of California Consumer Privacy Act ("CCPA"), and declaratory judgment. Plaintiff seeks damages and injunctive relief, including and requiring ParkMobile to adopt reasonably sufficient practices to safeguard PII that remains in ParkMobile's custody in order to prevent incidents like the Data Breach from reoccurring in the future.

## PARTIES

8.     Plaintiff Jack William Weaver is a citizen and resident of the State of California. At all times relevant to this Complaint, Plaintiff was a customer of ParkMobile.  Plaintiff's PII was disclosed without authorization to unknown third parties as a result of ParkMobile's Data Breach.

9.     Since the announcement of the Data Breach, Plaintiff has been required to spend his valuable time changing passwords and monitoring his various accounts in an effort to detect and prevent any misuses of his PII—time which he would not have had to expend but for the Data Breach.

10.     As a result of the Data Breach, Plaintiff has been and will continue to be at heightened risk for fraud and identity theft, and their attendant damages for years to come. Such risk is certainly impending and is not speculative, given that information from the Data Breach is already being offered for sale on the dark web.

11.     Defendant ParkMobile, LLC is a Delaware Limited Liability Company with its principal place of business 1100 Spring Street, NW Atlanta, Georgia. Defendant ParkMobile, LLC is comprised of member ParkMobile USA, Inc.

12.     Defendants, ParkMobile, LLC and ParkMobile USA, Inc. are Delaware corporations with their principal place of business at 1100 Spring Street NW, Atlanta, Georgia.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because Plaintiff and at least one member of the Classes, as defined below, is a citizen of a different state than Defendants, there are more than 100 members of each of the Classes, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

14.     Defendant ParkMobile, LLC is a Delaware LLC with its principal place of business Atlanta, Georgia.  Its sole member, Defendant ParkMobile USA, Inc. is a citizen of Georgia.  Plaintiff is a citizen of California. Minimal diversity requirement under CAFA is met.

15.     The Court has personal jurisdiction over Defendants because at all relevant times they have engaged in substantial business activities in California.  Defendants have, at all relevant times, transacted, solicited, and conducted business in California through their employees, agents, and/or sales representatives, and derived substantial revenue from such business in California.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this District.

### **FACTUAL BACKGROUND**

***ParkMobile***

17.     "ParkMobile Makes Parking a Breeze" by providing "one parking app to handle it all[.]"[1]

18.     ParkMobile holds itself out to be "the leading provider of parking solutions in the U.S. and it's our mission to power smart mobility for every driver and vehicle, everywhere."[2]

19.     ParkMobile allows users to pay the cost of parking at a parking meter, extend time on the meter, or reserve a parking space before the user arrives at their destination, all from ParkMobile's mobile applications.[3] "ParkMobile helps millions of people easily find and pay for parking on their mobile devices. People can use ParkMobile solutions to quickly pay for street and garage parking without having to use a meter or kiosk. Additionally, ParkMobile offers parking reservations for concerts, sporting events, airports, campuses and more."[4]

20.     ParkMobile provides its users with details about parking in the area, such as whether there is EV charging for electric vehicles, covered parking, onsite security, valet parking, or handicap parking.[5]

---

[1] https://parkmobile.io/how-it-works/
[2] https://parkmobile.io/company/
[3] https://parkmobile.io/how-it-works/
[4] https://parkmobile.io/company/
[5] https://parkmobile.io/how-it-works/

21.     Users can also pay $0.99 per month to receive ParkMobile Pro, which provides users with additional benefits such as, *inter alia*, discounts on car washes, roadside assistance, and rental car discounts.[6]

22.     ParkMobile allows users to store up to seven different payment methods in order to make payments for parking charges.[7]

23.     ParkMobile is "[l]ocated in 8 of the top 10 U.S. cities, [and] helps millions of people park smarter every year."[8]

24.     To use ParkMobile, users must create an on-line account with Defendants. As part of its relationship with users, ParkMobile routinely acquires and stores the users' PII on its systems.

25.     Users are entitled to security of their PII. As a vendor storing sensitive data, ParkMobile has a duty to ensure that such private, sensitive information is not disclosed or disseminated to unauthorized third parties.

***The ParkMobile Data Breach***

26.     On March 26, 2021, ParkMobile announced that it "recently became aware of a cybersecurity incident linked to a vulnerability in a third-party software that we use."[9] ParkMobile stated that their "investigation indicates that no sensitive data or Payment Card Information, which we encrypt, was affected."[10]

27.     On April 13, 2021, ParkMobile provided a security update, stating that their "investigation concluded that encrypted passwords, but not the encryption keys needed to read them, were accessed." Further, ParkMobile's "investigation has confirmed that basic user information – license plate numbers and, if provided by the user, email addresses and/or phone numbers, and vehicle nicknames – was accessed. In a small percentage of cases, mailing addresses were affected."[11]

---

[6] *Id.*
[7] *Id.*
[8] https://parkmobile.io/company/
[9] https://support.parkmobile.io/hc/en-us/articles/360058639032-Update-Security-Notification-March-2021
[10] *Id.*
[11] *Id.*

28.    The PII obtained from ParkMobile has already been listed for sale on a Russian crime forum for $125,000.[12] This PII can then be used to commit cybercrimes against Plaintiff and the members of the Classes.

29.    The information obtained in the Data Breach contains the PII of approximately 21 million individuals.[13]

***ParkMobile Obtains, Collects, and Stores Plaintiff's and Class Members' PII***

30.    In the ordinary course of doing business with ParkMobile's users—Plaintiff and members of the Class are regularly required to provide their sensitive, personal and private protected information in order to register and use Defendants' services.

31.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, ParkMobile assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

32.    Plaintiff and members of the Classes reasonably expect that service providers such as Defendants will use the utmost care to keep this information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

33.    Defendants acknowledge in their privacy policy their obligation to keep users' PII confidential, stating "[a]t ParkMobile, we are committed to respecting your privacy."[14]

34.    Despite Defendants' commitment to protecting personal information, ParkMobile failed to prioritize data and cyber security by adopting reasonable data and cyber security measures to prevent and detect the unauthorized access to Plaintiff's and Class Members' PII.

35.    Had ParkMobile remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, ParkMobile could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential PII.

---

[12] https://krebsonsecurity.com/2021/04/parkmobile-breach-exposes-license-plate-data-mobile-numbers-of-21m-users/
[13] *Id.*
[14] https://parkmobile.io/privacy-policy/

*The Value of Private Information and Effects of Unauthorized Disclosure*

36.     ParkMobile was well aware that the protected PII it acquires is highly sensitive and of significant value to those who would use it for wrongful purposes.

37.     PII is a valuable commodity to identity thieves, particularly when it is aggregated in large numbers. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identity theft, and medical and financial fraud.[15] Indeed, a robust "cyber black market" exists in which criminals openly post stolen PII and other protected financial information on multiple underground Internet websites, commonly referred to as the "dark web."

38.     PII is valued on the dark web at approximately $1 per line of information.[16]

39.     The ramifications of ParkMobile's failure to keep Plaintiff and Class Members' PII secure are long lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

40.     Further, criminals often trade stolen PII on the "cyber black market" for years following a breach. Cybercriminals can also post stolen PII on the internet, thereby making such information publicly available.

41.     ParkMobile knew, or should have known, the importance of safeguarding the PII entrusted to it and of the foreseeable consequences if its data security systems were breached. ParkMobile failed, however, to take adequate cyber security measures to prevent the Data Breach from occurring.

*FTC Guidelines*

42.     ParkMobile is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

---

[15] https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft
[16] https://www.pacetechnical.com/much-identity-worth-black-market/#:~:text=Personally%20identifiable%20information%20is%20sold,at%20a%20fast%20food%20joint

43.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[17]

44.     The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no longer needed, encrypt information stored on networks, understand their network's vulnerabilities, and implement policies to correct any security problems.[18]

45.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[19]

46.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

47.     ParkMobile failed to properly implement basic data security practices. ParkMobile's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer PII constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

48.     ParkMobile was at all times fully aware of its obligations to protect the PII of consumers because of its business model of collecting PII and storing payment information. ParkMobile was also aware of the significant repercussions that would result from its failure to do so.

***California Consumer Privacy Act***

49.     Defendants have a "duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information." Cal. Civ. Code § 1798.150.

---

[17] https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf
[18] https://www.ftc.gov/system/files/documents/plain-language/pdf-0136proteting-personal-information.pdf
[19] *Id.*

50.    California Civil Code § 1798.150 provides for a private cause of action when a consumers "nonencrypted and nonredacted personal information . . ., or whose email address in combination with a password or security question and answer that would permit access to the account is subject to an unauthorized and exfiltration, theft, or disclosure" as a result of the breach of duty imposed by the CCPA.

51.    Personal information, as defined by California Civil Code § 1798.81.5(d)(1) includes either: (i) an individual's first name or first initial and last name in combination with a unique identification number, such as a license plate; or (ii) a username or email address in combination with a password or security question and answer that would permit access to an online account.

52.    Defendants' failure to safeguard Plaintiff's and members of the California Class' PII is a violation of the CCPA.

***Plaintiff and Class Members Suffered Damages***

53.    The ramifications of ParkMobile's failure to keep PII secure are long lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud, occurring 65 percent of the time.[20]

54.    In 2019 alone, consumers lost more than $1.9 billion to identity theft and fraud.[21]

55.    Besides the monetary damage sustained, consumers may also spend anywhere from approximately 7 hours to upwards to over 1,000 hours trying to resolve identity theft issues.[22]

56.    Plaintiff and members of the Classes now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Classes are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

57.    Despite all of the publicly available knowledge of the continued compromises of PII, ParkMobile's approach to maintaining the privacy of PII was reckless, or in the very least, negligent.

---

[20] https://www.identityforce.com/blog/identity-theft-odds-identity-theft-statistics#:~:text=In%202019%2C%2014.4%20million%20consumers,about%201%20in%2015%20people&text=Identity%20theft%20is%20the%20most,data%20breaches%20increased%20by%2017%25
[21] *Id.*
[22] https://www.lifelock.com/learn-identity-theft-resources-how-long-does-it-take-to-recover-from-identity-theft.html#:~:text=And%20ID%20theft%20recovery%20is,more%20resolving%20identity%20theft%20problems

58.    As a result of ParkMobile's failure to prevent the Data Breach, Plaintiff and members of the Classes have suffered and will continue to suffer injuries, including loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the Data Breach; theft of their valuable PII; the imminent and certainly impeding injury flowing from fraud and identity theft posed by their PII being placed in the hands of criminals; damages to and diminution in value of their PII that was entrusted to Defendants with the understanding the Defendants would safeguard the PII against disclosure; and continued risk to Plaintiff's and the Class Members' PII, which remains in the possession of Defendants and which is subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect the PII that was entrusted to them.

## CLASS ALLEGATIONS

59.    Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following classes:

**Nationwide Class**

All individuals in the United States whose PII was compromised in the ParkMobile Data Breach which occurred around March 2021.

**California Class**

All individuals residing in California whose PII was compromised in the ParkMobile Data Breach which occurred around March 2021.

60.    Excluded from the Classes are Defendants, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which Defendants have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

61.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes if necessary before this Court determines whether certification is appropriate.

62.    The requirements of Rule 23(a)(1) are satisfied.   The classes described above are so numerous that joinder of all individual members in one action would be impracticable.   The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court. The exact size of the classes and the identities of the individual members thereof

are ascertainable through Defendants' records, including but not limited to, the files implicated in the Data Breach.

63. The requirements of Rule 23(a)(2) are satisfied. There is a well-defined community of interest and there are common questions of fact and law affecting members of the Classes. The questions of fact and law common to the Classes predominate over questions which may affect individual members and include the following:

a. Whether and to what extent Defendants had a duty to protect the PII of Plaintiff and Class Members;

b. Whether Defendants were negligent in collecting and storing Plaintiff's and Class Members' PII;

c. Whether Defendants had duties not to disclose the PII of Class Members to unauthorized third parties;

d. Whether Defendants took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII;

e. Whether Defendants failed to adequately safeguard the PII of Class Members;

f. Whether Defendants breached their duties to exercise reasonable care in handling Plaintiff's and Class Members' PII by storing that information unencrypted on computers and hard drives in the manner alleged herein, including failing to comply with industry standards;

g. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h. Whether Defendants had respective duties not to use the PII of Class Members for non-business purposes;

i. Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

j. Whether Defendants violated § 1798.150 of the CCPA by failing to prevent unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and Class member's PII;

k.      Whether Plaintiff and Class Members are entitled to damages as a result of Defendants' wrongful conduct; and

l.      Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

64.    The requirements of Rule 23(a)(3) are satisfied. Plaintiff's claims are typical of the claims of the members of the Classes.  The claims of the Plaintiff and members of the Classes are based on the same legal theories and arise from the same failure by Defendants to safeguard PII.

65.    Plaintiff and members of the Classes were each customers of ParkMobile, each having their PII obtained by an unauthorized third party.

66.    The requirements of Rule 23(a)(4) are satisfied. Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the members of the Classes.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Classes and has no interests antagonistic to the members of the Classes.  In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and members of the Classes are substantially identical as explained above. While the aggregate damages that may be awarded to the members of the Classes are likely to be substantial, the damages suffered by the individual members of the Classes are relatively small.  As a result, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for each member of the Classes to individually seek redress for the wrongs done to them.  Certifying the case as a class will centralize these substantially identical claims in a single proceeding, which is the most manageable litigation method available to Plaintiff and the Classes and will conserve the resources of the parties and the court system, while protecting the rights of each member of the Classes. Defendants' uniform conduct is generally applicable to the Classes as a whole, making relief appropriate with respect to each Class member.

## FIRST CAUSE OF ACTION
### NEGLIGENCE
### (On Behalf of Plaintiff and the Nationwide Class)

67.    Plaintiff restates and realleges all proceeding allegations above as if fully set forth herein.

68.    ParkMobile owed a duty under common law to Plaintiff and the Nationwide Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and

protecting their PII in its possession from being compromised, lost, stolen, accessed and misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing ParkMobile's security systems to ensure that Plaintiff's and Nationwide Class Members' PII in ParkMobile's possession was adequately secured and protected; (b) implementing processes that would detect a breach of its security system in a timely manner; (c) timely acting upon warning and alerts, including those generated by its own security systems, regarding intrusions to its networks; and (d) maintaining data security measures consistent with industry standards.

69.    ParkMobile's duty to use reasonable care arose from several sources, including but not limited to those described below.

70.    ParkMobile had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Nationwide Class Members were the foreseeable and probable victims of any inadequate security practices on the part of Defendants. By collecting and storing valuable PII that is routinely targeted by criminals for unauthorized access, ParkMobile was obligated to act with reasonable care to protect against these foreseeable threats.

71.    ParkMobile admits that it has the responsibility to protect consumer data, that it is entrusted with this data, and that it did not live up to its responsibility to protect the PII at issue here.

72.    ParkMobile breached the duties owed to Plaintiff and Nationwide Class Members and thus was negligent. ParkMobile breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII of Plaintiff and Nationwide Class Members; (b) detect the breach while it was ongoing; (c) maintain security systems consistent with industry standards; and (d) disclose that Plaintiff's and Nationwide Class Members' PII in ParkMobile's possession had been or was reasonably believed to have been, stolen or compromised.

73.    But for ParkMobile's wrongful and negligent breach of its duties owed to Plaintiff and Nationwide Class Members, their PII would not have been compromised.

74.    As a direct and proximate result of ParkMobile's negligence, Plaintiff and Nationwide Class Members have suffered injuries, including:

a.    Theft of their PII;

1        b.      Costs associated with requested credit freezes;

2        c.      Costs associated with the detection and prevention of identity theft;

3        d.      Costs associated with purchasing credit monitoring and identity theft protection

4 services;

5        e.      Lowered credit scores resulting from credit inquiries following fraudulent

6 activities;

7        f.      Costs associated with time spent and the loss of productivity from taking time to

8 address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of

9 the ParkMobile Data Breach;

10       g.      The imminent and certainly impending injury flowing from potential fraud and

11 identity theft posed by their PII being placed in the hands of criminals;

12       h.      Damages to and diminution in value of their PII entrusted, directly or indirectly, to

13 ParkMobile with the mutual understanding that ParkMobile would safeguard Plaintiff's and

14 Nationwide Class Members data against theft and not allow access and misuse of their data by

15 others; and

16       i.      Continued risk of exposure to hackers and thieves of their PII, which remains in

17 ParkMobile's possession and is subject to further breaches so long as ParkMobile fails to undertake

18 appropriate and adequate measures to protected Plaintiff.

19    75.    As a direct and proximate result of ParkMobile's negligence, Plaintiff and Nationwide

20 Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an

21 amount to be proven at trial.

22 **SECOND CAUSE OF ACTION**<br>**NEGLIGENCE PER SE**

23 **(On Behalf of Plaintiff and the Nationwide Class)**

24    76.    Plaintiff restates and realleges all proceeding factual allegations above as if fully set forth

25 herein.

26    77.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce"

27 including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as

28

ParkMobile for failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of ParkMobile's duty.

78.    ParkMobile violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with the industry standards. ParkMobile's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of a data breach.

79.    ParkMobile's violation of Section 5 of the FTC Act constitutes negligence *per se*.

80.    Plaintiff and Nationwide Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect. Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Nationwide Class Members.

81.    As a direct and proximate result of ParkMobile's negligence, Plaintiff and Nationwide Class Members have been injured as described herein and in Paragraph 74 above, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**VIOLATION OF CAL. CIV. CODE § 1798.150**
**(On Behalf of Plaintiff and the California Class)**

82.    Plaintiff restates and realleges all proceeding allegations above as if fully set forth herein.

83.    Defendant ParkMobile USA Inc. is a corporation organized or operated for the profit or financial benefit of its owners with annual gross revenues over $25 million.

84.    Defendant ParkMobile, LLC is an LLC organized or operated for the profit or financial benefit of its owners with annual gross revenues over $25 million.

85.    Defendants collect and store consumers personal information, including PII, as defined by California Civil Code § 1798.81.5.

86.    Defendants have a duty to implement and maintain reasonable security procedures and practices to protect Plaintiff's and members of the California Class' PII.

87.    Defendants failed to meet that duty resulting in the unauthorized access and exfiltration, theft, or disclosure of the Plaintiff's and the California Class members' PII, in violation of § 1798.150 of the CCPA.

88.    Plaintiff and the California Class members seek relief pursuant to § 1798.150(a), including, inter alia, actual damages, injunctive or declaratory relief, and any other relief this Court deems proper. Plaintiff and members of the California Class also seek attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

89.    As Defendants are still in possession of California Class' PII, Plaintiff and members of the California Class seek injunctive or other equitable relief to ensure that Defendants implement and maintain reasonable security procedures and practices such that events like the Data Breach do not occur again.

90.    In addition to filing this Complaint, on or about June 16, 2021, Plaintiff sent Defendants a notice pursuant to § 1798.150(b) via overnight mail. If Defendants do not cure the violations as alleged herein, which cure is unlikely given that the Data Breach has already occurred and the PII is already for sale, Plaintiff will amend this Complaint to seek damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty dollars ($750) per consumer per incident.

<u>**FOURTH CAUSE OF ACTION**</u>
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiff and the Nationwide Class)**

91.    Plaintiff restates and realleges all proceeding allegations above as if fully set forth herein.

92.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

93.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Nationwide Class Members' PII and whether ParkMobile is currently maintaining data security measures adequate to protect Plaintiff's and Nationwide Class Members from further data breaches that compromise their PII. Plaintiff alleges that ParkMobile's data security measures remain inadequate. ParkMobile publicly denies these allegations. Furthermore, Plaintiff continues to suffer injury as a result of the

compromise of his PII and remains at imminent risk that further compromises of his PII will occur in the future.

94.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.    ParkMobile owes a legal duty to secure consumers' PII and to timely notify consumers of a data breach under the common law, and Section 5 of the FTC Act; and

    b.    ParkMobile continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII.

95.    This Court also should issue corresponding prospective injunctive relief requiring ParkMobile to employ adequate security protocols consistent with law and industry standards to protect consumers' PII.

96.    If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at ParkMobile. The risk of another such breach is real, immediate, and substantial. If another breach at ParkMobile occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

97.    The hardship to Plaintiff if an injunction is not issued exceeds the hardship to ParkMobile if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to ParkMobile of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and ParkMobile has a pre-existing legal obligation to employ such measures.

98.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at ParkMobile, thus eliminating the additional injuries that would result to Plaintiff and consumers whose confidential information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff on behalf of herself and all other similarly situated, prays for relief as follows:

a.     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

b.     For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

c.     For damages in an amount to be determined by the trier of fact;

d.     For an order of restitution and all other forms of equitable monetary relief;

e.     Declaratory and injunctive relief as described herein;

f.     Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

g.     Awarding pre- and post-judgment interest on any amounts awarded; and,

h.     Awarding such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

A jury trial is demanded on all claims so triable.

Dated: July 1, 2021             **CARLSON LYNCH, LLP**

By:   */s/Todd D. Carpenter*
Todd D. Carpenter (SBN 234464)
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.:    (619) 762-1900
Fax:    (619) 756-6991
tcarpenter@carlsonlynch.com

Gary F. Lynch (PA ID 56887)
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel.:    (412) 322-9243
Fax:    (412) 231-0246
glynch@carlsonlynch.com

Arthur M. Murray
Caroline T. White
**MURRAY LAW FIRM**
Hancock Whitney Center
701 Poydras Street, Suite 4250
New Orleans, Louisiana 70139
Tel.:    (504) 593-6473
Fax     (504) 584-5249
amurray@murray-lawfirm.com
cthomas@murray-lawfirm.com

CLASS ACTION COMPLAINT

Joseph Guglielmo
Erin Green Comite
Anja Rusi
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.:    (212) 223-6444
Fax:    (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com
arusi@scott-scott.com

Karen Hanson Riebel
Kate M. Baxter-Kauf
**LOCKRIDGE GRINDAL NAUEN, P.L.L.P**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel:    (612) 339-6900
khriebel@locklaw.com
kmbaxter-kauf@locklaw.com

MaryBeth V. Gibson
**THE FINLEY FIRM, P.C.**
3535 Piedmont Road
Building 14, Suite 230
Atlanta, GA 30305
Tel.:    (404) 320-9979
Fax:    (404) 320-9978
mgibson@thefinleyfirm.com

Brian C. Gudmundson
Michael J. Laird
**ZIMMERMAN REED LLP**
80 S 8th Street, Suite 1100
Minneapolis, MN 55402
Tel    (612) 341-0400
Fax    (612) 341-0844
brian.gudmundson@zimmreed.com
michael.laird@zimmreed.com

James Pizzirusso (pro hac vice forthcoming)
**HAUSFELD LLP**
888 16th Street N.W., Suite 300
Washington, DC 20006
Tel.:    (202) 540-7200
Fax:    (202) 540-7201
jpizzirusso@hausfeld.com

CLASS ACTION COMPLAINT

Steven M. Nathan (pro hac vice forthcoming)
**HAUSFELD LLP**
33 Whitehall St., 14th Floor
New York, NY 10004
Tel.:    (646) 357-1100
Fax:    (212) 202-4322
snathan@hausfeld.com

Bryan L. Bleichner (CA #220340)
**CHESTNUT CAMBRONNE PA**
100 Washington Ave. S., Suite 1700
Minneapolis, MN 55401
Tel.:    (612) 339-7300
bbleichner@chestnutcambronne.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT